UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JANET MARIE TILLERY,<br><br>                Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                Defendant. | Case No. 3:12-cv-05975-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disabled widow's and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On March 21, 2006, plaintiff filed an application for disabled widow's benefits, alleging she became disabled beginning January 1, 2001. See ECF #11, Administrative Record ("AR") 16. That application was denied upon initial administrative review on September 6, 2006, and on reconsideration on November 7, 2006. See id. On July 16, 2008, plaintiff filed an application for SSI benefits, also alleging disability as of January 1, 2001, which was "escalated to the hearing

ORDER - 1

level." Id.  A hearing was held before an administrative law judge ("ALJ") on October 22, 2008, at which plaintiff, represented by counsel, appeared and testified. See AR 461-84.

In a decision dated November 26, 2008, the ALJ determined plaintiff to be not disabled. See AR 16-26.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 29, 2009, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 5; see also 20 C.F.R. § 404.981, § 416.1481. That decision was appealed to this Court, which on March 8, 2010, upon the stipulation of the parties, reversed and remanded the matter for additional administrative proceedings, including re-evaluation and further development of the medical evidence in the record. See AR 523-24, 527. On April 24, 2010, pursuant to the Court's order the Appeals Council vacated the ALJ's decision and remanded the matter for such additional proceedings. See AR 533, 535-36.

A second hearing was held before the same ALJ on September 27, 2010, at which plaintiff, represented by counsel, appeared and testified. See AR 1100-1114.  In a decision dated December 8, 2010, the ALJ again determined plaintiff to be not disabled. See AR 506-22.  It does not appear from the record that the Appeals Council assumed jurisdiction of the case. See 20 C.F.R. § 404.984, § 416.1484.  The ALJ's decision therefore became the Commissioner's final decision after sixty days. Id.  On November 9, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1.  The administrative record was filed with the Court on February 13, 2013. See ECF #11.  A supplemental record was filed with the Court on April 10, 2013. See ECF #17.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ

ORDER - 2

erred: (1) in failing to properly determine plaintiff's severe medically determinable impairments; (2) in failing to properly consider the impact of the side effects from her medications; (3) in assessing her residual functional capacity; and (4) in ignoring or not following the instructions of the Appeals Council on remand.[1]  For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is

---

[1] Plaintiff also argues in his opening brief that the Commissioner further erred by failing to include new and material evidence that was submitted to the Appeals Council.  However, because that evidence has been provided to the Court via submission of the supplemental record (see ECF #14-#17) and plaintiff has filed a supplemental opening brief with respect thereto, that issue is now moot (see ECF #18).

ORDER - 3

required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.      Plaintiff's Severe Medically Determinable Impairments

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520, § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

The ALJ in this case found plaintiff had severe impairments consisting of chronic obstructive pulmonary disease, degenerative disc disease and acid reflux. See AR 510.  Plaintiff argues the ALJ erred in not also finding her major depressive, panic, social anxiety, generalized anxiety, and posttraumatic stress disorders, as well as her headaches and incontinence, to be severe impairments.  The Court disagrees.  In regard to plaintiff's mental health impairments, headaches and incontinence, the ALJ found in relevant part as follows:

> The claimant . . . alleges that headaches [and] incontinence . . . cause her to be disabled.  However, the medical record shows that these impairments do not limit the claimant's ability to perform work activities.  The medical evidence does not show that headaches are frequent enough to prevent the claimant from working.  The claimant testified that she controls her incontinence by wearing adult diapers. . . .
>
> . . .
>
> The claimant's medically determinable mental impairments of depression and anxiety do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.  The claimant received treatment for this condition in 2009, but her treatment provider opined that her Global Assessment of Functioning (GAF) score is 65, indicating only mild symptoms (Ex. 17F, p. 9).  In September 2009 Disability Determination Services (DDS) examiner Thomas Clifford, Ph.D., concluded that the record did not support the finding of a severe mental impairment (Ex. 16F).  Records created since that time do not establish the presence of a severe mental impairment; therefore I find that the claimant's mental health disorders are not severe.

AR 510-11 (internal footnotes omitted).

ORDER - 5

First, with respect to headaches, plaintiff asserts her own testimony – that they can last for up to 48 hours at a time, that when she gets them she cannot do much besides just lay in bed and cannot maintain sufficient focus and concentration to do work-like activities (see AR 1108) – supports a finding of severity. But while the ALJ must take into account a claimant's reported pain and other symptoms at step two of the sequential disability evaluation process (see 20 C.F.R. § 404.1529, § 416.929), the severity determination is made solely on the basis of the objective medical evidence in the record (see SSR 85-28, 1985 WL 56856 *4 (at second step of sequential evaluation process, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities")).

As noted by the ALJ, the objective medical evidence in the record contains little, if any, indication that plaintiff was actually limited by her headaches in terms of her ability to perform basic work activities. Indeed, plaintiff has not pointed to any. In addition, although plaintiff has challenged the ALJ's treatment of her reported medication side effects, including headaches, she has not asserted error in regard to any of the ALJ's other stated reasons for finding her less than fully credible concerning her subjective complaints and allegations of disability.[3] See AR 515-17. To the extent plaintiff's testimony differs from the ALJ's assessment of her ability to function, therefore, he did not err in failing to adopt it.

As for her incontinence, the Court agrees the ALJ mischaracterized plaintiff's testimony in stating she testified that she "controls" that condition by wearing adult diapers. Although she testified that she did not have accidents "so much lately" because of them, plaintiff also testified that she had to go to the bathroom "about every 45 minutes." AR 1112. Thus, while she may no

---

[3] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 6

longer experience accidents with the frequency that she once did, according to plaintiff she still was regularly impacted by her incontinence, at least in terms of needing to go to the bathroom. That being said, plaintiff has failed to demonstrate any error with respect to the ALJ's statement that there is no objective medical support in the record to show that this condition has an adverse impact on her ability to perform work activities. For that reason, the Court finds the ALJ's error in mischaracterizing plaintiff's testimony to be harmless.[4]

Lastly in terms of the allegedly severe mental health impairments, once more plaintiff primarily relies on her own testimony and self-reports concerning the symptoms and limitations arising therefrom. But also once more, given the ALJ's unchallenged reasons for determining plaintiff to be not entirely credible regarding her subjective complaints, the ALJ was not required to give any weight to that testimony or those self-reports. Plaintiff points to the statement of her treating physician, Richard T. Dehlinger, M.D., in late October 2004, that due to "[h]er anxiety flares during episodes of psychosocial stress including formal testing," he would "recommend that she be given longer times to complete academic tests." AR 157. The undersigned agrees the ALJ erred in failing to address that statement in his decision, but again finds that error to be harmless in light of the fact that, as noted by the ALJ, the substantial weight of the subsequent medical evidence of record fails to support more than minimal limitations on her ability to work.[5]

---

[4] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

[5] Indeed, examining psychiatrist Paul Choi, M.D., specifically noted in late August 2006, that plaintiff "did not endorse psychiatric symptoms as the reason why she is unable to work." AR 261. Although plaintiff points out that Dr. Choi diagnosed her with both a major depressive disorder and a social anxiety disorder, Dr. Choi also found the major depressive disorder to be only mild in severity and the social anxiety disorder to be solely "by history," and expressly opined that "[f]rom a psychiatric perspective," there was "no reason she would not be able to perform work on a consistent basis," and she appeared "to be managing and functioning decently." AR 265-66. Further, the mere fact that plaintiff has been diagnosed with a mental health disorder by Dr. Choi – or any other mental health professional such as Felicia Hanig, ARNP, to whom plaintiff also points as supporting a finding of severity here, for that matter (see AR 789) – is an insufficient basis upon which to establish disability. See Matthews v. Shalala, 10

ORDER - 7

See AR 265-66, 277-79, 762, 764, 792, 798.

Plaintiff also points to the late January opinion of treating therapist Stephanie Dann that while she has "[s]evere difficulty in financial and social areas of functioning" and "is unable to be employed at this time," she could "function in a school environment." AR 763.  With respect to that opinion the ALJ stated:

> I give some weight to the opinion of Stephanie Dann, who concluded that the claimant's mental health impairments would cause only mild limitation in preventing her from working (Ex. 17F, p. 8).  This opinion is inconsistent with the medical record and consistent with Ms. Dann's finding that the claimant has a GAF [score] of 65 (Ex. 17F, p. 9).  Her inconsistent comment on the previous page that "(c)laimant is unable to be employed at this time but can function in a school environment," is unexplained and accorded zero weight, as is the comment concerning severe difficulty in social functioning.  These comments may represent claimant [sic] report.  As discussed above, the evidence shows that the claimant's mental impairments are non-severe, and do not prevent her from performing work duties.  I accord more weight to the better supported longitudinal assessment of Dr. Thomas Clifford at Exhibit 16F.

AR 519 (internal footnote omitted).  Plaintiff does not challenge the ALJ's statement that Ms. Dann's opinion is inconsistent with the mild limitations she found plaintiff had in work, school or other daily activities and the GAF score of 65 she assessed at the same time.[6]  See AR 763-65.  Discrepancies between an opinion source's functional assessment and his or her clinical notes or other comments, "is a clear and convincing reason for not relying" on the assessment. Bayliss v.

---

F.3d 678, 680 (9th Cir. 1993); see also Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (noting that "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the [diagnosed] condition," and upholding finding of non-severity where doctors reports were silent as to any limitations that may stem from that impairment). So too is the mere fact that psychiatric medications have been prescribed.  That is, the existence of a prescription for medication does not by itself indicate the presence of significant work related limitations.  In addition, the fact that plaintiff was able to attend the second hearing apparently after having taken medication due to a panic attack she had just prior to the hearing (see AR 1104), indicates her medication is effective in enabling her to function adequately, thereby supporting a finding of non-severity here.

[6] As noted by the ALJ, a GAF score of 65 "reflects mild symptoms or "some difficulty[in social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994) (referring to GAF score of 61-70)).

ORDER - 8

Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see also Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989).

The ALJ also was not remiss in rejecting Ms. Dann's opinion on the basis that she failed to explain why she believed plaintiff was not able to work, but could function at school. See id. Plaintiff points to findings Ms. Dann noted regarding both observed and self-reported symptoms. But to the extent Ms. Dann relied on plaintiff's self-reported symptoms the ALJ did not err in rejecting her opinion in part on this basis, given as discussed above the ALJ's adverse credibility determination, which plaintiff largely leaves unchallenged. Further, to the extent Ms. Dann also relied on symptoms she observed during her evaluation of plaintiff – which appears questionable given the fairly unremarkable mental status examination results obtained (see AR 762) – that still does not explain the inconsistency between Ms. Dann's opinion that plaintiff was unable to work and her opinion that she could function at school.[7]

II.     Side Effects from Plaintiff's Medications

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148

---

[7] Also not acknowledged by plaintiff, the ALJ gave greater weight to the opinion of non-examining psychologist Thomas Clifford, Ph.D., which was permissible here as well given that Ms. Dann is not an "acceptable medical source." See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (ALJ may give less weight to opinions of those who are not acceptable medical sources); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"). While plaintiff does assert in general that the ALJ erred in regard to the weight he gave Dr. Clifford's opinion, she fails to argue with any specificity exactly how the ALJ did so. See ECF #13, p. 15. Accordingly, the Court finds that assertion to be without merit.

ORDER - 9

(9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

As noted above, the ALJ in this case provided a number of reasons for finding plaintiff to be less than fully credible concerning her subjective complaints and allegations of disability. See AR 515-17. Also as noted above, plaintiff does not specifically challenge any of those reasons, but instead argues the ALJ erred in failing to properly consider the impact of the side effects she experienced from her medications. In regard to medication side effects, the ALJ stated he had "considered [plaintiff's] allegations of side effects in coming to [his] conclusions regarding her residual functional capacity, which account[ed] for all limitations [he found] credible on the record as a whole." AR 515 n.8.

While the Court agrees this statement by the ALJ by itself is not sufficient to constitute a

ORDER - 10

clear and convincing reason for finding her not fully credible concerning her testimony and self-reports of medication side effects given its lack of specificity, again plaintiff has not challenged any of the other reasons the ALJ gave for discounting her credibility regarding her subjective complaints and allegations of disability.  Thus, this case is unlike that presented in Varney v. Secretary of Health and Human Services, 846 F.2d 581 (9th Cir. 1988), wherein the ALJ failed to make any findings regarding the claimant's allegations of medication side effects or to give any specific reasons for determining she lack credibility with respect thereto. See id. at 585-86.  Plaintiff's reliance on that case, therefore, is unavailing.[8]

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable

---

[8] Plaintiff also asserts "[h]er treating providers have further noted and cautioned [her] about the side effects she experiences." ECF #13, p. 13.  However, she fails to point to any specific portion of the record in which such side effects are noted by her providers based on their actual observations of her, as opposed to her own self-reporting thereof.  In addition, the mere fact that certain medications can cause side effects does not necessarily mean that they actually do so.

ORDER - 11

impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity to perform light work, along with the ability to occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and the need to avoid concentrated exposure to pulmonary irritants. See AR 513.  Plaintiff argues the ALJ erred by not including in his RFC assessment all of the functional limitations related to her headaches, incontinence and mental health impairments.  But as discussed above, the ALJ did not err in finding that those impairments had no more than a minimal impact on plaintiff's ability to perform basic work activities, and therefore that they were non-severe.  Plaintiff has failed to show the objective medical evidence in the record supports inclusion of greater limitations due to those impairments than found by the ALJ.  In addition, in light of plaintiff's failure to challenge the reasons the ALJ gave for discounting her credibility, the Court also finds the ALJ did not err in declining to include any additional limitations based on her testimony.

V.	The Appeals Council's Instructions on Remand

Plaintiff argues that despite being directed by the Appeals Council to re-evaluate the medical evidence in the record on remand, the ALJ failed to do so with regard to the opinion evidence from examining physician Elizabeth Arias, M.D.  The Court disagrees.  Although the ALJ did not directly address the opinion of Dr. Arias in his most recent decision, he did state at the beginning thereof that "[e]xcept to the extent inconsistent with the findings and conclusions of this decision, I adopt the discussion, findings, and conclusions of my prior decision *as if fully set forth herein*." AR 507 (emphasis added).  That prior decision contains the ALJ's discussion of Dr. Arias's opinion and sets forth the ALJ's reasons for declining to adopt those limitations

ORDER - 12

Dr. Arias assessed that are more restrictive than the ALJ found.  <u>See</u> AR 25.  It thus is reasonable to assume that the ALJ once more was rejecting those limitations for the same reasons he did in his prior decision.[9]  Since plaintiff has not challenged those reasons, the Court declines to find any error on the part of the ALJ here.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 5th day of December, 2013.

Karen L. Strombom
United States Magistrate Judge

---

[9] <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989) (court may draw "specific and legitimate inferences from the ALJ's opinion").

ORDER - 13